# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 10 C 3168** |
| **v.** ) | |
| ) | **Magistrate Judge Morton Denlow** |
| **ASIA PACIFIC TELECOM, INC.,** ) | |
| **d/b/a ASIA PACIFIC NETWORKS,** ) | |
| **REPO B.V.,** ) | |
| **SBN PERIPHERALS, INC., d/b/a** ) | |
| **SBN DIALS,** ) | |
| **JOHAN HENDRIK SMIT** ) | |
| **DUYZENTKUNST, and** ) | |
| **JANNEKE BAKKER-SMIT** ) | |
| **DUYZENTKUNST,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court for partial summary judgment on the issue of whether Defendants Johan Hendrik Smit Duyzentkunst ("Smit") and SBN Peripherals, Inc. ("SBN") (collectively "Defendants") violated FTC regulations that prohibit abandoned calls when they operated an autodialer that delivered prerecorded messages to consumers. At the suggestion of the Court, the parties agreed that resolving this discrete issue would materially advance the case. The FTC now seeks partial summary judgment as to Count X of its complaint, which alleges that Defendants incurred "assisting and facilitating" liability when their telemarketing customers abandoned calls originated from Defendants' autodialer.[1] A

---

[1] The FTC has not filed a motion for summary judgment separate from its briefings or Local Rule 56.1 statement. After a status hearing in which the parties agreed to seek a discrete

previous sanctions finding against Smit and SBN also comes into play. After an evidentiary hearing, the Court found Defendants in contempt of court and as a sanction held that they "will be subject to 'assisting and facilitating' liability for all violations of [certain FTC regulations] that occurred in calls initiated from the autodialer." *FTC v. Asia Pacific Telecom, Inc.*, --- F. Supp. 2d ----, 2011 WL 2110220, at *10 (N.D. Ill. 2011). For the reasons explained below, the Court grants in part and denies in part the FTC's motion for partial summary judgment.

## I. BACKGROUND FACTS

This case represents a telemarketing enforcement action by the FTC. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC is also charged with enforcement of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the Telemarketing Sales Rule, 16 C.F.R. Part 310, which prohibits deceptive or abusive telemarketing acts or practices.

Smit and SBN operated an "autodialing" business that allowed clients to deliver large numbers of prerecorded phone calls, or "robocalls." SBN is a California corporation, with

---

resolution of the "abandoned calls" issue, the Court entered a briefing schedule for "partial summary judgment on the issue of abandoned calls." Dkt. 150. The Court treats the FTC's initial brief, Dkt. 153, as its motion. In the alternative, the Court may also consider summary judgment on its own initiative, pursuant to Federal Rule of Civil Procedure 56(f).

its principal offices in Agoura Hills, California. Pl.'s 56.1 ¶ 2.[2] Smit is the director and sole officer and shareholder of SBN. *Id.* ¶ 3.

The parties jointly developed a stipulation of facts that were to form the basis for this motion. Pursuant to the stipulation, SBN operated an autodialer, which delivered prerecorded messages (otherwise known as "voice prompts") in outbound telephone calls made to consumers between January 1, 2008 and August 31, 2009. *Id.* ¶ 9–10. The prerecorded messages delivered to consumers between January 1, 2008 and August 31, 2009 were the first thing that a call recipient would hear after the recipient's completed greeting. *Id.* ¶ 11. Most, and perhaps all, of the prerecorded messages the autodialer delivered to consumers between January 1, 2008 and August 31, 2009 lasted longer than two seconds. *Id.* ¶ 12. If a call recipient who received a prerecorded message pressed "1" during the message, the recipient would be transferred to a live operator. Stipulation ¶ 5, Ex. 2 to Pl.'s 56.1.

A previous sanctions finding is also relevant to this motion. On May 25, 2011, the Court held Smit and SBN in contempt of court for intentionally destroying an e-mail account that contained evidence relevant to this case. As a sanction, the Court entered the following adverse finding:

> Within the meaning of 16 C.F.R. § 310.3(b), Johan Hendrik Smit Duyzentkunst and SBN Peripherals, Inc. provided substantial assistance and support to all sellers or telemarketers who, using the autodialer at issue in this

---

[2] "Pl.'s 56.1" refers to the FTC'S Local Rule 56.1 Statement of Uncontested Material Facts in Support of Partial Summary Judgement of the Issue of Abandoned Calls, Dkt. 154.

action, made any calls that violated 16 C.F.R. §§ 310.3(a)(2)(iii), (a)(2)(vii), or (a)(4), or 16 C.F.R. § 310.4. For all such calls, Smit and SBN knew that the sellers or telemarketers were engaged in acts or practices that violated 16 C.F.R. §§ 310.3(a)(2)(iii), (a)(2)(vii), or (a)(4), or 16 C.F.R. § 310.4. As a result, Smit and SBN will be subject to "assisting and facilitating" liability for all violations of 16 C.F.R. §§ 310.3(a)(2)(iii), (a)(2)(vii), or (a)(4), or 16 C.F.R. § 310.4 that occurred in calls initiated from the autodialer.

2011 WL 2110220, at *10. This finding encompasses the abandoned calls provision at issue here. *See* 16 CFR § 310.4(b)(1)(iv).

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether summary judgment should be granted, the court interprets all facts and reasonable inferences "in the light most favorable to the nonmovant party." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008).

## III. DISCUSSION

It is undisputed that Defendants operated an autodialer that delivered prerecorded messages longer than two seconds in outbound telephone calls made to consumers. The question is whether the regulatory definition of "abandoned calls" embraces prerecorded messages, and if so, whether any other genuine issues of material fact stand in the way of partial summary judgment. The FTC has limited its motion to calls occurring on or after January 1, 2008 and on or before August 31, 2009. This limited time frame obviates the

issue of whether robocalling-specific regulations that took effect on September 1, 2009 impliedly removed prerecorded messages from the scope of the abandoned calls regulation.

### A. The Regulatory Definition of "Abandoned Calls" Embraces Prerecorded Messages.

Before determining whether summary judgment is appropriate, the Court must decide an issue of regulatory interpretation. The FTC Telemarketing Sales Rule ("TSR") makes it illegal for a telemarketer to abandon any outbound telephone call. 16 C.F.R. § 310.4(b)(1)(iv). The regulation also defines what constitutes "abandoning" a call:

> An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

*Id.* This provision unambiguously embraces prerecorded messages. Moreover, even if the provision were ambiguous, deference is due the FTC's clear and consistent interpretation applying the provision to prerecorded messages.

#### 1. The Abandoned Call Provision Unambiguously Embraces Prerecorded Messages.

When approaching an issue of regulatory interpretation, the first question is whether the regulation's language is ambiguous. If not, then the Court is to apply the regulation according to its plain meaning. *See Christensen v. Harris County*, 529 U.S. 576, 588 (2000). Deference to an agency's interpretation of its own regulations "is warranted only when the language of the regulation is ambiguous." *Id.* The language of the regulation itself, rather than a subsequent agency interpretation, is the proper focus of the ambiguity determination. *See id.*

The TSR's abandoned call provision is not ambiguous. The regulation establishes that a call is abandoned if a person answers and the telemarketer does not connect the call to a "sales representative" within two seconds of the recipient's completed greeting. No reasonable interpretation of this provision leads to the conclusion that "sales representative" can mean "prerecorded message." In ordinary usage, a sales representative is a person who attempts to sell products, not a recording that offers to connect a call recipient to a live operator. A prerecorded message may offer to connect the call recipient to a sales representative, but the message itself is not a sales representative. Because "sales representative" means a live person, the "abandoned calls" definition unambiguously embraces prerecorded messages in addition to dead air and hang-ups. At least one other district court has reached the same conclusion.

In the context of a First Amendment challenge to the abandoned calls provision, *The Broadcast Team, Inc. v. FTC* held that the FTC's interpretation—that 'sales representative" means a live person—comported with "common sense and ordinary usage." 429 F. Supp. 2d 1292, 1300–1301 (M.D. Fla. 2006). The regulation is unambiguous, so it must be interpreted according to its plain meaning. Thus, under the abandoned call provision, outbound telemarketing calls are abandoned if the recipient remains connected to a prerecorded message, rather than a live operator, for more than two seconds after the recipient's completed greeting.

**2. The FTC's Rulemaking Proceedings and History of Enforcement Reinforce that the Abandoned Calls Provision Embraces Prerecorded Messages.**

Defendants make no attempt to offer a competing interpretation of the regulation's plain language, preferring instead to focus on the FTC's explanation of the provision over the years. As a matter of regulatory interpretation, the FTC's interpretation of its own regulation comes into play only if the regulation is ambiguous. *Christensen*, 529 U.S. at 588. When looking to an agency's interpretation of its own regulation, that interpretation is "controlling unless plainly erroneous or inconsistent with the regulation." *Joseph v. Holder*, 579 F.3d 827, 831 (7th Cir. 2009) (quoting *Auer v. Robbins*, 519 U.S. 452, 461(1997)). Defendants argue that the FTC's previous interpretation and enforcement of the provision is so inconsistent with the interpretation it proposes here that to credit the FTC's proposed interpretation would render the regulation void for vagueness. Due Process requires that the regulation "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). As explained below, the FTC has clearly and consistently interpreted the abandoned calls provision as applicable to prerecorded messages.

The FTC's original regulations implementing the Telemarketing Act did not contain an abandoned call provision, but the FTC amended its regulations in 2003. *Telemarketing Sales Rule; Final Amended Rule*, 68 Fed. Reg. 4580, 2003 WL 179638 (Jan. 29, 2003). Defendants note that eliminating dead air and hang-ups were driving purposes behind the abandoned calls provision. But in the published notice that accompanied the amendments, the FTC unambiguously asserted that the abandoned calls prohibition applied to "recorded solicitation message[s]." 68 Fed. Reg. 4580, 4644. So said the FTC in explaining the

"recorded message" component of the abandoned call safe harbor. The safe harbor allows telemarketers to avoid liability for abandoning calls if, among other things, they play a short recorded message disclosing certain details. *See* 16 C.F.R. § 310.4(b)(4)(iii). The FTC stated:

> The "recorded message" component of the safe harbor must be read in tandem with the prohibition of abandoned calls, under which telemarketers must connect calls to a sales representative within two seconds of the consumer's completed greeting to avoid a violation of the Rule. ***Clearly, telemarketers cannot avoid liability by connecting calls to a recorded solicitation message rather than a sales representative.*** The Rule distinguishes between calls handled by a sales representative and those handled by an automated dialing-announcing device. The Rule specifies that telemarketers must connect calls to a sales representative rather than a recorded message.

68 Fed. Reg. 4580, 46444 (emphasis added). In other words, the "recorded message" component of the safe harbor may require a brief recorded disclosure, but it does not sanction recorded solicitations in lieu of a live salesperson. Even absent this explanation by the FTC, the "recorded message" component of the safe harbor would make little sense if the prohibition of abandoned calls did not apply to prerecorded messages; requiring telemarketers to play a recorded disclosure with particular content would make no sense if any prerecorded message at all could serve as its own *de facto* safe harbor.

The balance of the regulatory materials likewise demonstrate that the FTC has consistently interpreted that the prohibition of abandoned calls applies to prerecorded messages. For instance, a 2003 report to Congress explained:

> Under the amended TSR's call abandonment provisions, 97 percent of a telemarketer's calls that are answered by a live consumer ***must be connected to a live representative*** within two seconds after the called party completes his or her greeting. The safe harbor permits telemarketers to abandon 3 percent of calls answered by a live person, provided the telemarketer plays a short

-8-

recorded message promptly after the called party completes his or her greeting. ***Thus, the amended TSR imposes limits on telemarketing calls that employ recorded messages rather than live operators***.

*Report to Congress Pursuant to Do Not Call Implementation Act* 33 (Sept. 2003) (emphasis added). That report also explained that the FTC's regulations were more restrictive of recorded messages than comparable FCC regulations:

> [C]allers subject to the FCC's regulations, but not the FTC's amended TSR, will continue to be able to run calling campaigns that employ a recorded message to present a sales pitch provided the campaign is directed solely to consumers with whom the seller has an existing business relationship. ***Companies subject the FTC's amended TSR will not be permitted to conduct such campaigns because they would not be connecting the call to a live operator in all but 3 percent of cases.***

*Id.* at 34 (emphasis added). The same report did relate that "FTC staff do not anticipate enforcing the Rule against sellers who use recorded messages when they have obtained the express consent of the called party." *Id.* at 25. But simply because the government in its discretion adopts a policy to forbear from enforcing the law in certain defined situations does not change what the law says.

The same logic about forbearance policies applies to the FTC's "preexisting business" forbearance policy, announced as a proposed rule in 2004. It allowed telemarketers to deliver recorded solicitations if the telemarketer had a preexisting business relationship with the consumer. *See Telemarketing Sales Rule, Notice of Proposed Rulemaking*, 69 Fed. Reg. 67287, 67289–90, 2004 WL 2597328 (Nov. 17, 2004). Though the FTC later limited the "preexisting business" forbearance policy after it rejected the proposed rule, the agency officially announced the change in enforcement and gave businesses time to adapt. *See Telemarketing Sales Rule, Denial of Petition for Proposed Rulemaking; Revised Proposed Rule With Request for Public Comments*, 71 Fed. Reg. 58716, 58727, 2006 WL 2817633 (Oct. 4, 2006) (extending the forbearance policy until January 2007 to give businesses time to comply with the TSR); *Telemarketing Sales Rule, Extension Beyond January 2, 2007*, 71 Fed. Reg. 77634, 2006 WL 3779636 (Dec. 27, 2006) (further extending the forbearance policy). The FTC has provided no indication that it wishes to enforce the abandoned calls prohibition against Defendants any differently than described in its official policies.

The FTC also re-emphasized its interpretation of the abandoned calls provision when it issued now-effective robocalling rules. The rules explicitly prohibit telemarketers from using prerecorded messages in most outbound telephone calls. When proposing these rules, the agency stated:

> [T]he Commission also seeks to address the criticism, encountered by FTC staff in providing industry guidance, that the text of the TSR does not straightforwardly address recorded message telemarketing . . . . ***The Commission continues to think that the plain language of the call abandonment provision itself prohibits calls delivering prerecorded messages when answered by a consumer, a position it has repeatedly stated, and that has been accepted by at least one court.***

*Telemarketing Sales Rule, Denial of Petition for Proposed Rulemaking; Revised Proposed Rule With Request for Public Comments*, 71 Fed. Reg. 58716, 58726, 2006 WL 2817633 (Oct. 4, 2006) (emphasis added). Defendants quote the first sentence of this passage but omit the second, which typifies their skewed view of the regulatory record. The FTC has clearly and consistently interpreted the abandoned calls prohibition as embracing prerecorded messages.

In addition to the FTC's official policy statements, the agency's on-the-ground enforcement of the TSR also illustrates that the agency has consistently interpreted the abandoned calls prohibition as applying to prerecorded solicitations. This enforcement policy was just what gave rise to the suit in *The Broadcast Team*, discussed above. *See* 429 F. Supp. 2d at 1295. More importantly, the FTC has identified four previous enforcement actions much like this one. All four actions alleged that computerized dialing services much like Defendants' violated the abandoned calls provision by delivering prerecorded messages in outbound telephone calls.[3] These lawsuits belie Defendants' contention that this case represents a novel enforcement action.

---

[3] The lawsuits are (1) *United States v. The Broadcast Team*, 05-cv-1920 (M.D. Fla. Dec. 29, 2005) (Cmpl. ¶¶ 20–27, 34, Ex. B to FTC's Br., Dkt. 153); (2) *United States v. Guardian Communications, Inc.*, No. 4:07-4070 (C.D. Ill. Nov. 6, 2007) (Compl. ¶¶ 11–21, 33, Ex. C to FTC's Br.); (3) *United States v. Voice-Mail Broadcasting Corp.*, No. 2:08-cv-521 (C.D. Cal. Jan. 28, 2008) (Compl. ¶¶ 7, 17–22, Ex. D to FTC's Br.); and (4) *FTC v. Voice Touch, Inc.*, No. 09 C 2929 (N.D. Ill. Sept. 16, 2009) (Sec. Amend. Compl. ¶¶ 24, 58, Ex. E to FTC's Br.).

The FTC's interpretation and enforcement of the abandoned call provision thus echoes the regulation's plain meaning. The FTC provided ample notice that the abandoned calls provision embraced prerecorded messages, and it made clear the limited exceptions and forbearance policies. The FTC has not violated Defendants' Due Process rights.

**B.     The Uncontested Facts Are Insufficient to Warrant a Judgment of Liability on Count X.**

Having established that the definition of "abandoned calls" embraces prerecorded messages, the FTC requests that the Court enter summary judgment on liability with respect to Count X of its complaint. Count X alleges that Defendants provided substantial assistance and support to sellers or telemarketers whom Defendants knew or consciously avoided knowing were engaged in violations of § 310.4 of the TSR, thus subjecting them to "assisting and facilitating" liability. *See* § 310.3(b). The abandoned calls provision falls within § 310.4. Taken together with the Court's sanctions finding, which establishes assisting and facilitating liability against Defendants for any autodialer calls that violated § 310.4, the FTC argues for a liability finding on Count X.

The uncontested facts, however, do not establish liability on Count X. As Defendants correctly note, the stipulated facts do not establish how many autodialer calls were made by "telemarketers," even though that is an element of prima facie liability under the abandoned calls provision. Nor do the facts establish how many of the calls were answered by a "person," as opposed to an answering machine. Of course, Defendants do concede that the autodialer "allowed sellers and telemarketers to deliver recorded messages . . . in outbound

telephone calls made to consumers." Defs.' Br. 1–2.[4]  Taken together with the sanctions finding, it seems inevitable that Defendants will face liability for abandoning some number of calls.  But that does not change the fact that Defendants wish to argue certain calls or groups of calls qualified for regulatory exceptions or FTC forbearance policies.  The parties disagree over who bears the burden of proof regarding certain regulatory exceptions.  But regardless of burden, those issues fell outside the discrete legal issue on which the Court requested briefing, so the Court will decide this motion without prejudice to either party presenting evidence on regulatory exceptions or safe harbors.  A judgment of liability would be premature given the outstanding disputes over just which autodialer calls will result in liability.  The FTC urges that the Court need not identify the exact number of millions of calls that were abandoned, and that may be true, but the Court cannot enter a liability finding when liability issues remain for a yet-to-be-determined number of calls.

Finally, a word about issues that do not remain in dispute.  First, the sanctions finding will result in assisting and facilitating liability under 16 C.F.R. § 310.3(b) for any abandoned call delivered by Defendants' autodialer.  The finding establishes that Defendants provided substantial assistance and support to all sellers or telemarketers who used the autodialer to makes calls in violation of the abandoned calls provision. *See* 2011 WL 2110220, at *10.  Though Defendants' Local Rule 56.1 statement effectively attempts to deny Defendants' knowledge of the underlying violations, that issue is no longer open for debate.

---

[4] "Defs.' Br." refers to Defendants' Brief on Abandoned Calls, Dkt. 155.

In addition, the length of prerecorded messages delivered through the autodialer is not in dispute. Defendants admit that the recordings were the first thing a call recipient would hear after the person's completed greeting and that "most, and perhaps all" of these recordings lasted longer than two seconds. Pl.'s 56.1 ¶¶ 11–12. Thus, Defendants have raised no genuine issue of fact as to the length of the calls.

To sum up, only a limited number of issues stand in the way of a liability finding on Count X. Within the meaning of 16 C.F.R. Part 310, Smit and SBN will be held liable for assisting and facilitating the abandoning of a call for (1) any prerecorded message delivered by their autodialer on or after January 1, 2008 and on or before August 31, 2009 (2) to a person (3) by a telemarketer in an outbound telephone call (4) unless Defendants establish an affirmative defense regarding the call. The Court anticipates that many of Defendants' calls will fall clearly on one side or the other of this inquiry and therefore encourages the parties to negotiate an agreement on the number of calls abandoned by Defendants.

## V. CONCLUSION

**For the reasons set forth in this opinion, the Court grants in part and denies in part the FTC's motion for partial summary judgment on the issue of abandoned calls. SO ORDERED THIS 26th DAY OF JULY, 2011.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Steven M. Wernikoff
Charles M. Evans
James Davis
Federal Trade Commission
55 West Monroe Street
Suite 1825
Chicago, IL 60603

Counsel for Plaintiff

Henry T. Kelly
Michael Ryan Dover
Kelley, Drye & Warren
333 West Wacker Drive
Suite 2600
Chicago, IL 60606

Counsel for Defendants

Gary Owen Caris
Lesley Anne Hawes
Mckenna Long & Aldridge LLP
300 South Grand Avenue
14th Floor
Los Angeles, CA 90071

Ira Bodenstein
Terence G. Banich
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 N. Clark Street
Suite 800
Chicago, IL 60654

Counsel for the Receiver